55 P.3d 13 (2002)
2002 WY 144
Theresa McCalla RINO, Appellant (Plaintiff),
v.
Katherine L. MEAD, Mead & Mead, Attorneys at Law; and James T. Sorensen, Appellees (Defendants).
Theresa McCalla Rino, Appellant (Plaintiff),
v.
Katherine L. Mead, Mead & Mead, Attorneys at Law, and James T. Sorensen, Appellees (Defendants).
Nos. 01-108, 01-165.
Supreme Court of Wyoming.
September 27, 2002.
*15 C.M. Aron of Aron and Hennig, LLP, Laramie, Wyoming, Representing Appellant.
Richard E. Day and Susan Chapin Stubson of Williams, Porter, Day & Neville, P.C., Casper, Wyoming, Representing Appellee Katherine L. Mead and Mead & Mead, Attorneys at Law.
Mark W. Gifford, Casper, Wyoming, Representing Appellee James T. Sorensen.
Before HILL, C.J., and GOLDEN, LEHMAN,[*] and VOIGT, JJ., and DONNELL, D.J.
VOIGT, Justice.
[¶ 1] These consolidated appeals are challenges to the district court's grant of summary judgment to an attorney and an accountant in a professional malpractice case and the district court's further denial by inaction of a subsequent motion to reconsider. We affirm the summary judgment in favor of the accountant because there are no genuine issues of material fact as to whether he made any professional representations that were relied upon by the appellant, and he is entitled to a judgment as a matter of law. However, we reverse the summary judgment granted to the attorney because she did not establish a prima facie case entitling her to summary judgment.

FACTS
[¶ 2] In October 1996, J. Douglas McCalla (McCalla) filed for divorce from Theresa McCalla, now Theresa Rino (Rino). McCalla was represented by attorney John Stark (Stark). Rino hired Katherine L. Mead (Mead) to represent her. With the assistance of a mediator, McCalla and Rino settled child custody and support issues, leaving for trial only the issue of property and debt division.
[¶ 3] Shortly before the date set for trial, McCalla, Rino, Stark, and Mead met to attempt to work out the property and debt issues. Also in attendance was appellee James T. Sorensen (Sorensen), who had acted as the McCallas' accountant during their marriage. Sorensen brought with him to the meeting a compiled financial statement he recently had prepared for the McCallas to *16 enable them to extend a bank credit line. That compiled financial statement was used at the meeting as the basis for a division of the marital assets and debts between McCalla and Rino. A settlement was reached and Stark advised the district court to cancel the trial.
[¶ 4] After the settlement meeting, a written settlement agreement was prepared. Rino refused to sign the agreement, terminated Mead's employment, and obtained new counsel. McCalla then filed a motion to enforce the agreement. After a hearing, an order was entered enforcing the settlement. The terms of the agreement were incorporated into the Decree of Divorce filed May 1, 1998.
[¶ 5] On September 23, 1999, Rino filed a professional malpractice complaint against Mead and Sorensen. Specifically, the complaint alleged that Mead had violated the following professional duties owed to Rino:
1. A duty of loyalty to her interests.
2. A duty to be truthful to her, and to honestly and in good faith keep her fully advised of the facts and law applicable to her legal situation in the divorce case, and of the preparations the attorneys had made for the trial set to commence on September 29, 1997.
3. A duty to investigate the applicable facts, particularly the valuation of the husband's interest in his law firm, and to evaluate the effect of those facts on the legal proceedings.
4. A duty to prepare for the trial set to commence on September 29, 1997, including but not limited to the duty to prepare the expert witnesses she allegedly had retained.
5. A duty to prepare for, advise Rino with regard to, and participate in, the mediation conducted on September 24, 1997, including but not limited to the duty to be conversant with the relevant financial facts which were in dispute between the parties, and a duty to negotiate zealously on behalf of Rino.
[¶ 6] The complaint alleged that Sorensen had violated the following professional duties owed to Rino:
1. A duty of loyalty to her interests when he purported to act on her behalf.
2. A duty to be truthful and unbiased with respect to the valuation of the husband's interest in his law firm.
3. A duty to provide accounting information that was truthful and represented accurately what it purported to show about the parties' assets and liabilities.
[¶ 7] Finally, Rino's complaint alleged that, as a result of the malpractice of Mead and Sorensen, Rino received more than $400,000.00 less than she should have received in the property division.
[¶ 8] Sorensen and Mead separately filed motions for summary judgment. Mead argued that the district court's enforcement of the settlement agreement collaterally estopped Rino from later contending that she had not agreed to the settlement. Sorensen's primary argument was that Rino knew the compiled financial statement was never intended by Sorensen as a representation of the value of the properties listed. The district court granted both motions and these appeals followed.

ISSUES
[¶ 9] The parties do not agree as to what issues are before this Court. To more fully present the parties' viewpoints, we will set forth the issues as they have been stated by them. Rino lists the issues as follows:
1. Whether it is error to grant summary judgment in favor of a lawyer sued for malpractice when there is [a] dispute of fact as to the following errors by the attorney:
a. Failure to hire an expert accountant for trial as promised.
b. Failure to provide advice or explanation of misleading financial documents with regard to the client's husband's law firm, showing the husband's interest in the law firm to have virtually zero value.
c. Failure to hire an attorney expert for trial to testify to the value of the husband's work in progress, as the attorney had promised.
d. Failure to obtain information about the client's husband's law firm financials and work in progress.

*17 e. Failure to assert a claim for alimony as promised.
f. Failure to be prepared to try the case.
g. Settlement of the case without the client's authority.
h. Incorrect legal advice concerning the client's right to a share of her husband's retirement account accumulated during the marriage.
2. Whether the court can disregard the opinions of the client's expert because they are based on assuming the hypothetical facts of the client's allegations of malpractice.
3. Whether the court can disregard the deposition testimony of the client's experts because the transcripts were filed of record by the opposing parties rather than the client.
4. Whether a court can rely on an expert opinion that there was no legal malpractice in a divorce case, when the expert considered only material from the divorce case while failing to consider any of the disputed facts in the malpractice claim itself.
5. Whether a client has to offer contradictory expert testimony when the lawyer's expert has given no opinion that there was an absence of malpractice.
* * *
6. Where both parties' experts agree it is accountant malpractice to present and use false and misleading financial information, whether the court can grant summary [judgment] on the factual issue of whether the financial information was misleading.
* * *
7. Whether it is error for the trial court to deny [W.R.C.P.] 60 relief when the court was incorrect with regard to the timely filing of the plaintiff's expert information in opposition to summary judgment.
[¶ 10] Mead contends that the sole issue before this Court is whether the district court properly entered summary judgment in favor of Mead when Rino failed to submit appropriate expert affidavits or other testimony to establish a genuine issue of material fact to counter the affidavit of Mead's expert that Mead acted in a reasonable, careful and prudent manner with respect to her representation of Rino and did not fall below the applicable standard of care.
[¶ 11] Sorensen presents the accountant malpractice issue as being whether summary judgment was appropriate where Rino failed to submit expert testimony to counter the testimony of Sorensen's expert that Sorensen complied in all respects with the applicable standard of care, where there was uncontroverted evidence that Sorensen effectively disclaimed any representation regarding the accuracy of the information presented in the compiled financial statement, and where Rino admitted that she did not rely upon the financial statement compiled by Sorensen.

STANDARD OF REVIEW
[¶ 12] Rulings on summary judgment motions are governed by the following language found in W.R.C.P. 56(c):
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
Our standard for the appellate review of a summary judgment was recently reiterated in Hasvold v. Park County School Dist. No. 6, 2002 WY 65, ¶ 11, 45 P.3d 635, 637-38 (Wyo.2002) (quoting Unicorn Drilling, Inc. v. Heart Mountain Irr. Dist., 3 P.3d 857, 860 (Wyo.2000)):
"Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.... We review a summary judgment in the same light as the district court, using the same materials and following the same standards. `We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record.'... Summary judgment serves the purpose of eliminating formal trials where only questions of law are involved.... We review a grant of summary judgment by deciding a question of law de novo and *18 afford no deference to the district court's ruling on that question....
... A material fact is any fact that, if proved, would have the effect of establishing or refuting an essential element of a claim or defense asserted by a party...."
Summary judgment is a drastic remedy because it denies a trial to the non-moving party. Coones v. F.D.I.C., 848 P.2d 783, 795 (Wyo.1993). The initial burden is on the movant to make a prima facie showing that there are no genuine issues as to any material fact and that he is entitled to a judgment as a matter of law. Hozian v. Weathermon, 821 P.2d 1297, 1298 (Wyo.1991) (quoting Boehm v. Cody Country Chamber of Commerce, 748 P.2d 704, 710 (Wyo.1987)). If the movant makes such a showing, the burden then shifts to the party opposing the motion to present specific facts showing the existence of genuine issues of material fact. Hozian, 821 P.2d at 1298 (quoting Boehm, 748 P.2d at 710).
[¶ 13] Over the years, this Court has repeatedly stated that summary judgments are not favored, especially in negligence actions. See, for example, Roitz v. Kidman, 913 P.2d 431, 432 (Wyo.1996); Hozian, 821 P.2d at 1298; and Dubus v. Dresser Industries, 649 P.2d 198, 201 (Wyo.1982). This rule is particularly true in malpractice actions. DeHerrera v. Memorial Hospital of Carbon County, 590 P.2d 1342, 1345 (Wyo. 1979) (quoting Holl v. Talcott, 191 So.2d 40, 46 (Fla.1966), cert. denied, 232 So.2d 181 (Fla.1969)). The mixed questions of law and fact usually involved in a negligence action concerning the existence of a duty, the standard of care and proximate cause "`are ordinarily not susceptible to summary adjudication.'" Hozian, 821 P.2d at 1298 (quoting Kobielusz v. Wilson, 701 P.2d 559, 560 (Wyo. 1985)). Whether a particular defendant's actions have violated the required duty is generally a question for the jury. Bancroft v. Jagusch, 611 P.2d 819, 821 (Wyo.1980). The existence of a duty is, however, a question of law, "`making an absence of duty the surest route to summary judgment in negligence actions.'" Schuler v. Community First Nat. Bank, 999 P.2d 1303, 1306 (Wyo.2000) (quoting Daily v. Bone, 906 P.2d 1039, 1043 (Wyo. 1995)); Krier v. Safeway Stores 46, Inc., 943 P.2d 405, 408 (Wyo.1997). One consequence of the fact that summary judgments are not favored in negligence actions is that, once granted, they are subject to "more exacting scrutiny" on appeal. Woodard v. Cook Ford Sales, Inc., 927 P.2d 1168, 1169 (Wyo.1996).
[¶ 14] Expert opinion evidence is not usually sufficient to support a motion for summary judgment because the weight to be given such testimony is generally an issue for the trier of fact. Western Sur. Co. v. Town of Evansville, 675 P.2d 258, 262 (Wyo.1984) (quoting Castleberry v. Collierville Medical Associates, Inc., 92 F.R.D. 492, 493 (W.D.Tenn.1981)). That is especially true of an affidavit that contains opinions and conclusions. Western Sur. Co., 675 P.2d at 262. The movant cannot prevail "merely by asserting a position on an ultimate fact in the supporting affidavit." Greenwood v. Wierdsma, 741 P.2d 1079, 1087 (Wyo.1987). On the other hand, a summary judgment based upon expert opinion affidavits may be appropriate "when the showing made by the movant is sufficient and uncontroverted." Conway v. Guernsey Cable TV, 713 P.2d 786, 788 (Wyo. 1986) (quoting Mealey v. City of Laramie, 472 P.2d 787 (Wyo.1970)). The most likely scenario for that to occur is where the only issue is one requiring expert opinion because the case is of a highly technical nature, such that laypersons could not understand it. Western Sur. Co., 675 P.2d at 263. In such case, if the expert opinion testimony is not controverted, summary judgment may be appropriate. Id. While it is true that in a malpractice case the standard of care and any violation thereof generally must be established through expert testimony, "the nonmoving plaintiff has no obligation to present expert testimony at the pretrial stage, unless the movant establishes that no material questions of fact exist with respect to the allegations in the complaint." Metzger v. Kalke, 709 P.2d 414, 422 (Wyo.1985).

PROFESSIONAL MALPRACTICE
[¶ 15] Much of Wyoming's professional malpractice law has developed in the arena of medical malpractice.
[¶ 16] This Court has imported that law into the field of legal malpractice:

*19 After establishing a duty, the plaintiff in a medical malpractice case
"`"has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered." ...'
... We conclude that the test applicable in our medical malpractice cases should also apply in the analogous situation of a legal malpractice claim."
Moore v. Lubnau, 855 P.2d 1245, 1248 (Wyo. 1993) (quoting Metzger, 709 P.2d at 421 and Harris v. Grizzle, 625 P.2d 747, 751 (Wyo. 1981)).[1]
[¶ 17] The general standard of care for lawyers in Wyoming is "`that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.'" Moore, 855 P.2d at 1248. As with medical malpractice, establishment of the actual standard adhered to by a "reasonable, careful and prudent" lawyer must typically be accomplished through expert testimony. Peterson v. Scorsine, 898 P.2d 382, 388 (Wyo.1995); Moore, 855 P.2d at 1249. However, expert testimony is not required where the common sense and experience of a layperson are sufficient to establish the standard of care. Meyer v. Mulligan, 889 P.2d 509, 516 (Wyo.1995) (quoting Moore, 855 P.2d at 1248).
[¶ 18] This Court has not previously been called upon to say whether these same principles apply to allegations of accountant malpractice. We cannot see why they should not.
As in the case of lawyers, doctors, architects, engineers, and others engaged in rendering professional services for compensation, it is implied in all contracts for the employment of public accountants that they will render their services with that degree of skill, care, knowledge, and judgment usually possessed and exercised by members of that profession in the particular locality, in accordance with accepted professional standards and in good faith without fraud or collusion. While not insurers against damage, it is generally recognized that accountants may be held liable to clients for damages resulting from fraud, misconduct, or negligence in their professional undertaking.
1 Am.Jur.2d Accountants § 19 at 543 (1994) (footnote omitted);[2]see also Hydroculture, Inc. v. Coopers & Lybrand, 174 Ariz. 277, 848 P.2d 856, 860 (1992).
[¶ 19] Just as with other professionals, a question has been raised as to whether an allegation of accountant malpractice sounds in tort or in contract.
Since a client's malpractice action against an accountant is necessarily based to some degree on a violation of the parties' contract, either by malfeasance or nonfeasance, some jurisdictions adhere to the view that an action for accountant malpractice is maintainable only on a breach of contract theory. However, the courts have more frequently recognized that accountants may be held liable to clients for malpractice in actions founded both on contract and tort.
1 Am.Jur.2d Accountants, supra, § 20 (footnote omitted). Some courts consider the action to be one in contract if the allegation is a violation of a specific contract term, but in tort if the allegation is a violation of a duty imposed by law as a result of the contractual relationship. See, for example, Thomas v. Cleary, 768 P.2d 1090, 1092 n. 6 (Alaska 1989); Billings Clinic v. Peat Marwick Main & Co., 244 Mont. 324, 797 P.2d 899, 908 (1990); and DOIT, Inc. v. Touche, Ross & Co., *20 926 P.2d 835, 841-42 (Utah 1996). When the cause of action for professional negligence sounds in tort, the elements are "(1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Linck v. Barokas & Martin, 667 P.2d 171, 173 n. 4 (Alaska 1983).
[¶ 20] We conclude that the standards as to professional malpractice that we have formerly adopted for medical malpractice, and have extended to legal malpractice, should apply equally in regard to allegations of accountant malpractice. Nothing has been shown to this Court to suggest that the practice of accounting, or the relationship between accountant and client, requires a different standard. After establishing a duty based on the accountant-client contract, the plaintiff in an accounting malpractice case has the obligation to establish (1) the accepted standard of accounting care or practice, (2) that the accountant's conduct departed from that standard, and (3) that the accountant's conduct was the legal cause of the injuries suffered.

DISCUSSION

LEGAL MALPRACTICE
[¶ 21] In its decision letter, the district court concluded that summary judgment in Mead's favor was appropriate because (1) Mead's submittals established a prima facie case that she was not negligent; (2) the issues were such that expert testimony was required to establish the standard of care and any violation thereof; and (3) Rino had not countered Mead's expert's testimony. We reverse because we find that Mead's submittals, including the affidavit of Mead's expert, did not establish that there were no genuine issues of material fact, and, thus, the burden did not shift to Rino to produce expert testimony. Havens v. Hoffman, 902 P.2d 219, 222-23 (Wyo.1995) (quoting Roybal v. Bell, 778 P.2d 108, 112-14 (Wyo.1989)).
[¶ 22] The affidavit of Mead's expert does contain some facts in substantiation of its conclusion that Mead's conduct did not fall below the standard of care. For instance, the affidavit cites to correspondence that shows Mead had considered the value of McCalla's law practice, as well as the issue of alimony. Beyond that, however, the affidavit does not counter Rino's other factual allegations that Mead failed to hire accountant and attorney experts as promised, failed to prepare for the mediation session, failed to prepare for the trial, and failed to give correct advice as to the treatment of McCalla's retirement account in the property division. With these issues of material fact remaining, Mead's expert's opinion that Mead "acted in a reasonable, careful and prudent manner with respect to her representation of" Rino is simply premature.
[¶ 23] The first rule for the entry of a summary judgment is that there must not remain any genuine issues as to any material facts. Indeed, the non-moving party's obligation to counter a motion for summary judgment with materials beyond the pleadings does not arise until the movant has made a prima facie showing that there are no such issues. Hozian, 821 P.2d at 1298 (quoting Boehm, 748 P.2d at 710). That showing was not made in this case. It cannot be said, as a matter of law, that Mead's conduct did not violate the standard of care when what Mead may or may not have done remains controverted.
[¶ 24] Before advancing to the malpractice allegations against Sorensen, we must address another substantial issue that was raised in Mead's summary judgment motion, was ruled upon in the district court's decision letter, was mentioned in the final order, but has not been addressed in this appeal. Mead contended in her motion that, under the doctrine of collateral estoppel, Rino was barred from relitigating issues in this case that had been decided when the district court enforced the settlement agreement. The collateral estoppel doctrine prohibits the relitigation of issues that were actually and necessarily involved in a prior action between the same parties. Kahrs v. Board of Trustees for Platte County School Dist. No. 1, 901 P.2d 404, 406 (Wyo.1995). *21 Courts are to consider four factors in deciding whether the doctrine applies:
"(1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding."
Id. (quoting Slavens v. Board of County Com'rs for Uinta County, 854 P.2d 683, 686 (Wyo.1993)) (emphasis in original).
[¶ 25] In its decision letter, the district court concluded that collateral estoppel applied as to some issues, but not others:
Collateral estoppel, then, precludes [Rino's] claims that Mead agreed to the settlement without Rino's consent, and that she entered into the settlement under duress because Rino was unprepared for trial. Collateral estoppel does not pre[v]ent Rino from claiming that Mead gave her bad advice about alimony, property values and retirement because those claims made no difference at the settlement enforcement hearing.
[¶ 26] The decision letter was dated December 7, 2000, and was filed on December 11, 2000. Some wrangling over the form of the order followed. On February 20, 2001, the district court judge signed the Order Granting Defendant Mead's Motion for Summary Judgment. That order contains the following "finding and conclusion:"
4. Judge Guthrie of the Ninth Judicial District heard the motion to enforce settlement and found that a settlement was reached on September 24, 1997, that the settlement terms were "inherently fair and equitable," that there was no evidence of fraud or undue influence in reaching the settlement, and that [Rino] assented to the settlement. [Rino] did not appeal Judge Guthrie's decision.
The order then granted summary judgment to Mead "as to all claims."
[¶ 27] We presume that the intent of the cited portion of the order was to grant summary judgment to Mead on the issue of collateral estoppel as outlined in the decision letter. Inasmuch as Judge Guthrie's decision was not appealed, and inasmuch as neither Mead nor Rino have in this appeal presented argument for or against the district court's application of collateral estoppel, the district court's ruling on that issue remains the law of the case.[3]
[¶ 28] Reversal of the summary judgment granted to Mead on the grounds set forth above forecloses any need to discuss Rino's appeal of the denial by inaction of her W.R.C.P. 60(b) motion raised as her seventh issue on appeal.

ACCOUNTANT MALPRACTICE
[¶ 29] In response to interrogatories propounded by Sorensen, Rino identified Sorensen's alleged acts of professional negligence as:
(1) At the settlement conference he presented a financial statement of ... McCalla's purported net worth that was knowingly false, or which he should have known was false. Among other things it reflected a net negative value of [McCalla's] partnership interest in his law firm, and generally misrepresented [McCalla's] assets and liabilities. (2) He had a conflict of interest in that he purported to act in [Rino's] interest as his client, when he apparently was acting in [McCalla's] interest and the interest of [McCalla's] law firm. (3) He misrepresented values of assets and the tax effects and valuations for divorce property division purposes, and in doing so he gave legal advice for which he was not qualified.
[¶ 30] The undisputed facts developed in the material supporting and opposing Sorensen's motion for summary judgment include the following:
*22 1. During September 1997, Sorensen prepared a compiled financial statement for the McCallas' use in extending a bank credit line.
2. Prior to issuing the compiled financial statement, Sorensen delivered to Rino a client representation letter that indicated in part that the McCallas were "responsible for the fair presentation of the statements of financial condition ...." McCalla signed the letter, but Rino refused.
3. Prior to issuing the compiled financial statement, Sorensen delivered to Rino an engagement letter that provided, in part, as follows:
We will perform the following service(s):
1. We will compile, from information you provide, the statement of financial condition of J. Douglas & Theresa McCalla as of September 5, 1997 in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. We will not audit or review such financial statements. Our report on the financial statements is presently expected to read as follows:
We have compiled the accompanying statement of financial condition of J. Douglas & Theresa McCalla as of September 5, 1997, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.
A compilation is limited to presenting in the form of financial statements information that is the representation of the individuals whose financial statements are presented. We have not audited or reviewed the accompanying statement of financial condition and, accordingly, do not express an opinion or any other form of assurance on it.
* * *
Our engagement cannot be relied upon to disclose errors, irregularities, or illegal acts, including fraud or defalcations, that might exist. However, we will inform you of any such matters that come to our attention unless they are clearly inconsequential.
4. Rino signed the engagement letter, acknowledging that it was in accordance with her understanding.
5. During the mediation session, Sorensen reminded McCalla and Rino that they each had their own valuation expert.
6. In her deposition testimony, Rino admitted that, at the mediation session, she did not rely on the valuation of McCalla's interest in his law firm contained in the compiled financial statement because she believed it to be "very inaccurate."
7. Rino was aware that she needed her own valuation expert and had designated such an expert as a witness.
8. Rino was aware that, after her separation from McCalla, Sorensen had continued to act as McCalla's accountant.
[¶ 31] It is clear that Rino knew that Sorensen had prepared the compiled financial statement in the limited fashion described in the disclaimers. Sorensen's expert established that, in doing so, Sorensen had not violated the professional standard of care. Rino did not counter that opinion with an expert opinion to the contrary. In fact, Rino's expert testified during his deposition that he had not formed an opinion as to whether or not Sorensen had complied with the applicable standard of care.
[¶ 32] The compiled financial statement plus the accompanying client representation letter and engagement letter effectively disclaimed any representation by Sorensen as to the accuracy of the values contained therein. Any reliance by Rino on the values set forth in the compiled financial statement would have been unreasonable. Davis v. Wyoming Medical Center, Inc., 934 P.2d 1246, 1251 (Wyo.1997) (quoting Lincoln v. Wackenhut Corp., 867 P.2d 701, 703 (Wyo.1994)). Further, Rino admitted in her deposition testimony that she did not rely on those values. At the mediation session, Sorensen reminded both McCalla and Rino that each needed his or her own valuation expert. Rino testified that she knew she needed her own valuation expert and that she believed the value of McCalla's interest in his law firm to be much more than the value shown in the compiled financial statement. Indeed, Rino had designated *23 an expert to testify as to the value of the marital estate.
[¶ 33] In her appellate brief, Rino contends that, by granting summary judgment to Sorensen, the district court was, in effect, deciding the fact question of whether the information in the compiled financial statement was misleading. That is not the case. Whether or not that information was misleading does not matter; the undisputed facts show that Rino knew that Sorensen was not representing the information as being accurate, and Rino did not rely on its accuracy. In other words, the accuracy of the information was not a material fact as it relates to the summary judgment motion.
[¶ 34] The district court was correct in granting Sorensen's motion for summary judgment. There are no genuine issues of material fact and Sorensen is entitled to judgment as a matter of law. Sorensen's expert established the professional standard of care and gave an opinion based on the undisputed facts that Sorensen did not breach that standard. Rino did not counter those opinions with a contrary expert opinion.

CONCLUSION
[¶ 35] Summary judgment should not have been granted to attorney Mead because there remain genuine issues of material fact as to Mead's conduct. Because those issues of material fact remain, the burden did not shift to Rino to produce expert testimony to counter Mead's expert. Summary judgment was, however, properly granted to accountant Sorensen because no genuine issues of material fact remain, Sorensen established through expert opinion testimony that he did not breach the professional standard of care, and Rino presented no expert evidence to the contrary.
[¶ 36] The summary judgment in favor of Mead is reversed, the summary judgment in favor of Sorensen is affirmed, and the case is remanded to the district court. Such remand does not include those issues determined by the district court to be barred by the doctrine of collateral estoppel.
NOTES
[*] Chief Justice at time of oral argument.
[1] This focus on the tort principles of negligence should not detract from the continued recognition that the attorney-client relationship is a contractual one. In Jackson State Bank v. King, 844 P.2d 1093, 1095-96 (Wyo.1993), we declined to extend the comparative negligence statute to a legal malpractice claim because such a claim is based on contract. Similarly, in Long-Russell v. Hampe, 2002 WY 16 ¶ 11, 39 P.3d 1015, 1020 (Wyo.2002), we held that a plaintiff in a legal malpractice case based on allegations of negligence is not entitled to present a claim for emotional distress damages, which is a tort remedy. In addition, a cause of action against an attorney may sound in contract where the allegation is the violation of a specific contract term, rather than the violation of a professional duty imposed by law. See the related discussion as to accountant malpractice.
[2] By quoting this source, we are not adopting a locality rule for testing accountant malpractice.
[3] "Under the `law of the case' doctrine, a court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." Triton Coal Co. v. Husman, Inc., 846 P.2d 664, 667 (Wyo.1993).