2004 WY 112

**Tiphany GAYHART, Appellant (Plaintiff),**

v.

**W. Keith GOODY, Attorney at Law, Appellee (Defendant).**

**No. 03–236.**

Supreme Court of Wyoming.

Sept. 24, 2004.

Representing Appellant: William R. Fix, Jackson, Wyoming.

Representing Appellee: Weston W. Reeves of Reeves & Miller, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Tiphany Gayhart and Richard Jordan were involved in an intimate relationship for a number of years, living together in Texas before moving to Jackson, Wyoming. In the course of their relationship, Ms. Gayhart became involved in Mr. Jordan's financial dealings and had access to Mr. Jordan's substantial assets. After the relationship ended, Mr. Jordan sought Ms. Gayhart's agreement to return the assets and obtained her signature on written agreements to that effect. When Ms. Gayhart disregarded the agreements, Mr. Jordan filed suit seeking to have them enforced. The district court upheld the agreements and entered judgment against Ms. Gayhart. She then filed a legal malpractice claim against her attorney, W. Keith Goody, claiming he was negligent in his representation of her. The district court granted summary judgment in favor of Mr. Goody, finding no genuine issue of material fact existed on the malpractice claim. We affirm.

## ISSUES

[¶ 2] Ms. Gayhart presents the following issues for review:

1. Whether the district court erred in granting summary judgment for the defendant in this legal malpractice action when the defense, in its motion for summary judgment on the issue of proximate cause, asserted that expert testimony was necessary on the issue of causation but did not make out a prima facie case supported by expert testimony.

2. Whether genuine issues of material fact existed which should have precluded the district court from granting summary judgment.

3. Whether a genuine issue of material fact exists as to whether the plaintiff suffered a "loss of chance" attributable to the defendant's negligence.

[¶ 3] Mr. Goody phrases the issues as:

A. Can a client who testified that she was not married sue her lawyer for failing to prove that she was married?

B. Whether the negligent acts charged by Appellant were the cause of any damage to her.

C. Whether the property which Appellant claims was lost because of the adverse outcome of her Wyoming case was actu-

ally lost to her by reason of a default judgment entered against her in litigation in the State of Texas.

## FACTS

[¶ 4]  In accordance with our standard of review for summary judgments, we summarize the facts in the light most favorable to Ms. Gayhart, as the party opposing the motion, giving to her all favorable inferences that may be drawn from them. *Bevan v. Fix*, 2002 WY 43, ¶ 4, 42 P.3d 1013, ¶ 4 (Wyo.2002).

### The Underlying Case

[¶ 5]  Ms. Gayhart met and became intimately involved with Mr. Jordan in Texas in the early 1990s.  The two lived together for six years, but never formally married.  Over the course of the relationship, Ms. Gayhart became involved in Mr. Jordan's extensive business dealings, including purchasing an interest in and later acquiring an ownership interest in one of his partnerships.

[¶ 6]  Prior to becoming involved with Ms. Gayhart, Mr. Jordan was married and divorced.  As part of the marital property division, Mr. Jordan entered into a trust agreement with his former wife requiring the transfer of their community property into a joint venture for their mutual benefit and the support of their children.  Under the terms of the trust agreement, Mr. Jordan was to manage the property in the joint venture and make distributions to his former wife.  When he became involved with Ms. Gayhart, Mr. Jordan stopped making the distributions and transferred some of the property to Ms. Gayhart.  As a consequence, his former wife filed a lawsuit in Texas naming Mr. Jordan and Ms. Gayhart as defendants and alleging fraudulent conveyance of the trust assets, among other claims.  Ms. Gayhart failed to enter an appearance in Texas and ultimately a default judgment was entered against her.

[¶ 7]  In 1995, Ms. Gayhart and Mr. Jordan moved from Texas to Wyoming.  They continued to live together and became involved in further joint financial dealings.  According to Ms. Gayhart's testimony, they discussed marriage but concluded they were better off not marrying because having their assets in her name separately would ensure they would still have assets if the litigation in which Mr. Jordan was involved turned out badly for him.

[¶ 8]  In 1998, Ms. Gayhart became disenchanted with Mr. Jordan and ended the relationship.  Mr. Jordan attempted to obtain her agreement to return assets to him.  Ultimately, he obtained her signature on written agreements requiring her to re-convey to him property he had conveyed to her during the relationship.  When Ms. Gayhart disregarded the agreements and continued to treat property that was the subject of the agreements as her own, Mr. Jordan filed an action seeking a declaratory judgment and specific performance to enforce the agreements.  Ms. Gayhart claimed Mr. Jordan obtained her signature on the agreements by fraud and duress and the agreements were void as against public policy.  She also filed a counterclaim for divorce, asserting that she and Mr. Jordan had entered into a common law marriage in Texas and she was entitled to one-half of the marital estate.

[¶ 9]  In the course of the litigation, Ms. Gayhart's counsel withdrew and Mr. Goody assumed representation of Ms. Gayhart.  Mr. Goody concluded there was no basis under Texas law for the common law marriage claim and did not pursue it.  On motion filed by Mr. Jordan, the district court granted summary judgment for Mr. Jordan on the common law marriage and fraud claims and denied summary judgment on the duress claim.  The case proceeded to trial to the court on the remaining claim.  At the close of the trial, the district court held the agreements were valid and binding and were not signed under duress and entered judgment for Mr. Jordan.

### The Present Case

[¶ 10]  After judgment was entered against her on Mr. Jordan's claims, Ms. Gayhart filed a complaint against Mr. Goody alleging claims for negligence, breach of fiduciary duty, breach of contract and punitive damages.  She subsequently filed an affidavit in which she asserted more specifically that Mr. Goody was negligent in failing to pursue

her common law marriage claim and adequately prepare her duress claim for trial. Mr. Goody answered and filed a motion for summary judgment in which he contended the common law marriage claim was unsupported by the law and Ms. Gayhart failed to prove his tactical decisions were the cause of damage to her. The district court held a hearing on the motion at the conclusion of which it granted summary judgment for Mr. Goody, finding: no genuine issue of material fact on the common law marriage question; Ms. Gayhart failed to establish the standard of care; and no causation between any negligence on Mr. Goody's part and the outcome in the underlying case. Ms. Gayhart appealed from the order granting summary judgment to Mr. Goody.

## STANDARD OF REVIEW

[¶ 11] Our standards for reviewing orders granting summary judgment are well established:

We review a summary judgment in the same light as the district court, using the same materials and following the same standards. Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.

A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden.

*Moore v. Lubnau,* 855 P.2d 1245, 1248 (Wyo. 1993) (citations omitted).

[¶ 12] Summary judgments are not favored, particularly in negligence and malpractice actions. *Rino v. Mead,* 2002 WY 144, ¶ 13, 55 P.3d 13, ¶ 13 (Wyo.2002). This is so because the question of whether a defendant's actions violated a duty is generally for the jury to determine. *Id.* The existence of a duty is, however, a question of law making an absence of duty the surest route to summary judgment in negligence actions. *Id.* One consequence of the fact that summary judgments are not favored in negligence actions is, once granted, they are subject to more exacting scrutiny on appeal. *Id.*

## DISCUSSION

[¶ 13] Ms. Gayhart presents two arguments. First, she argues the district court's order must be reversed because Mr. Goody's motion was not supported by expert testimony addressing causation. Second, she argues summary judgment was inappropriate because genuine issues of material fact existed on the issue of causation. Within the parameters of her second argument, Ms. Gayhart presents two alternative assertions. She contends expert testimony was not necessary to prove causation and a jury should have been allowed to determine such factual questions as: whether Mr. Goody's failure to produce and list an audiotape as an exhibit, resulting in its exclusion from the evidence at trial, affected the outcome on the duress claim; whether the evidence supported the common law marriage claim; and generally, whether Mr. Goody properly prepared for trial. In the alternative, she claims her expert witness's opinions sufficiently addressed the issue of causation under a "loss of chance" approach.

[¶ 14] Mr. Goody responds that summary judgment was appropriate because Ms. Gayhart failed to establish a genuine issue of material fact on her common law marriage claim and on causation. Mr. Goody also asserts that as a matter of law Ms. Gayhart suffered no injury by reason of his representation of her in the Wyoming litigation because the property she sought to recover was lost upon the entry of a default judgment against her in Texas.

[¶ 15] Having carefully reviewed all of the evidence in the court record at the time of the motion hearing, we hold that summary

judgment was proper. Unlike the parties' arguments, however, which focus on the causation element of a professional malpractice claim, our holding is based upon the standard of care element. We hold that Mr. Goody carried his burden of proving the absence of a genuine issue of fact on the question of whether he departed from the accepted standard of care and Ms. Gayhart thereafter failed to present specific facts showing that a genuine issue of material fact did exist on that issue.

[¶ 16] To succeed on a legal malpractice claim, a plaintiff must establish each of the following: 1) the existence of a duty; 2) the accepted standard of legal care; 3) that the attorney departed from the accepted standard of care; and, 4) that the attorney's conduct was the legal cause of the injuries suffered. *Bevan*, ¶ 40; *Moore*, 855 P.2d at 1248. Ordinarily, the question of whether the fourth element, causation, has been shown will not arise unless the plaintiff has established each of the other three elements. To establish a departure from the standard of care, the plaintiff must show that the attorney failed to exercise the degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction. *Id.* Expert testimony is required to establish the standard adhered to by a reasonable, careful and prudent lawyer except in circumstances where a layperson's common sense and experience are sufficient to establish the standard of care. *Id.*

[¶ 17] Addressing the burden of proof at the summary judgment stage in legal malpractice cases, we have said:

In the procedural posture of summary judgment, ... the attorney, as the moving party, first must make a prima facie showing that no genuine issue of material fact exists before summary judgment can be granted in his favor. To that end, the attorney, through expert testimony or affidavit, is required to demonstrate that his conduct conformed to the accepted standard of legal care.

*Bevan*, ¶ 41. If the attorney meets this initial burden, the plaintiff then must demonstrate through expert testimony that the at-

torney's conduct was not that of a reasonable Wyoming attorney. *Id.* Where the attorney meets his initial burden and the plaintiff fails to submit countervailing expert testimony establishing that no genuine issue of material fact existed, summary judgment is appropriate. *Id.* On the basis of these standards, we held in *Moore* that the attorney met his initial burden by offering expert evidence that his conduct in representing his client in a divorce case met the standard of care for lawyers practicing in Wyoming. In *Meyer v. Mulligan*, 889 P.2d 509 (Wyo.1995), we applied the same reasoning and held that the attorney was not entitled to summary judgment because he failed to include any expert evidence as to the applicable standard of care. In *Bevan*, we reaffirmed these principles:

[The attorney], as the moving party, had the initial prima facie burden of presenting expert testimony either by affidavit or deposition, sufficient to demonstrate that his conduct conformed to the accepted standard of legal care and was not the proximate cause of any injury to support his motion for summary judgment.... [O]ur review of the record ... shows that he failed to include any expert evidence in support of the motion, even his own affidavit.... Clearly, under the standards we announced in *Moore v. Lubnau* and *Meyer v. Mulligan*, summary judgment in [defendant's] favor would generally be precluded because he had completely failed to meet his prima facie burden on the standard of care and its breach, as well as proximate cause.

*Id.*, ¶ 44.

[¶ 18] More recently, in *Rino*, we applied the principles set out in our earlier cases to reverse a summary judgment order entered in favor of an attorney on a legal malpractice claim. We did so because the attorney's submittals in support of summary judgment, including an expert affidavit, "did not establish that there were no genuine issues of material fact, and, thus, the burden did not shift to [the plaintiff] to produce expert testimony." *Rino*, ¶ 21. We concluded the expert's affidavit did not counter many of the plaintiff's factual allegations against the at-

torney regarding the standard of care, including allegations that she "failed to hire accountant and attorney experts as promised, failed to prepare for the mediation session, failed to prepare for the trial, and failed to give correct advice as to the treatment of [a] retirement account in the property division." *Id.* at ¶ 22. With these issues of material fact remaining, we concluded, the expert's opinion that the attorney acted in a reasonable, careful and prudent manner with respect to her representation of her client was simply premature. We said:

> The first rule for the entry of summary judgment is that there must not remain any genuine issues as to any material facts.... Indeed, that showing was not made in this case. It cannot be said, as a matter of law, that Mead's conduct did not violate the standard of care when what Mead may or may not have done remains controverted.

*Id.* at ¶ 23.

[¶ 19] With this precedent freshly in mind, we turn to the question of whether the district court properly entered summary judgment for Mr. Goody. First we address Ms. Gayhart's claim that summary judgment was improper because Mr. Goody did not support his motion with expert evidence. We find her claim unsupported by the record. Although Mr. Goody initially did not file evidence from his own expert witness in support of his motion, he supplemented his argument prior to the summary judgment hearing by filing excerpts from his own expert's testimony to the effect that: Ms. Gayhart's common law marriage claim was not supported by Texas law given the overwhelming evidence that the couple was not married and did not hold themselves out as such; Mr. Goody's decision not to list the tape recording as an exhibit and to use it for impeachment of Mr. Jordan was a sound tactical decision; Mr. Goody's representation of Ms. Gayhart met the standard of care; and, the allegations of negligence were not causative of any damages to Ms. Gayhart. Ms. Gayhart did not object or move to strike the supplemental evidence. In fact, she submitted the same evidence in opposition to the summary judgment motion. Ms. Gayhart's claim that the order granting summary judgment should be reversed because Mr. Goody did not submit expert testimony is unfounded.

[¶ 20] Addressing Ms. Gayhart's second argument, in essence that genuine issues of material fact existed precluding summary judgment, we begin with her contention that expert testimony was not necessary under the facts of this case and that questions existed for jury determination, specifically whether admission of the audio tape would have made a difference, whether Mr. Jordan and Ms. Gayhart had a common law marriage, and whether Mr. Goody's trial preparation was generally adequate.

[¶ 21] Addressing first the common law marriage counter-claim, Texas law requires the following elements be met: "(1) agreement to be married; (2) after the agreement, living together in Texas as husband and wife; and (3) representing to others in Texas that they are married. A common-law marriage does not exist until the concurrence of all three elements." *Eris v. Phares,* 39 S.W.3d 708, 713 (Tex.App.2001) (citations omitted). Mr. Goody testified he abandoned the claim because Ms. Gayhart told him she and Mr. Jordan did not hold themselves out as husband and wife, she signed her tax returns as a single person, she called herself Mr. Jordan's fiancée and their agreement was to be married sometime in the future. He also testified that he did not believe the one item of evidence—a health club membership card bearing the name "Tiphany Jordan"—was near enough to prove Ms. Gayhart and Mr. Jordan had entered into a common law marriage.

[¶ 22] Mr. Goody's expert reviewed the applicable law and the facts and testified that in his opinion the common law marriage claim should never have been asserted because there was no evidence that the parties entered into an agreement to be married. He testified that with the exception of the health club membership card, all other documentation showed that when they had the opportunity to hold themselves out as a married couple, Ms. Gayhart and Mr. Jordan instead consistently indicated they were single. He also mentioned the absence of any

joint checking accounts or jointly held property and the absence of language in the settlement agreements addressing issues ordinarily addressed in a settlement between husband and wife.

[¶ 23] In contrast, Ms. Gayhart's expert testified that he was not prepared to express an opinion concerning the facts of the case and how they apply to the Texas common law marriage claim. That is to say, Ms. Gayhart's expert did not testify regarding the question of whether Mr. Goody departed from the standard of care in deciding to drop the common law marriage claim. Instead, Ms. Gayhart's expert testified that in his opinion, based upon Ms. Gayhart's representation that Mr. Goody dropped the claim without first consulting with her, Mr. Goody was negligent in not consulting with his client. Not only was Ms. Gayhart's representation to the expert inconsistent with her prior sworn testimony,[1] but the expert's testimony does not establish the existence of genuine issues of material fact on whether Mr. Goody departed from the standard of care with regard to the common law marriage issue. We have said:

> A material fact, expressed in various ways, is one having legal significance which would in a given case control the legal relations of the parties; one upon which the outcome of the litigation depends in whole or in part; one on which the controversy may be determined; one which will affect the result or outcome of the case depending upon its resolution; or one which constitutes a part of the plaintiff's cause of action or the defendant's defense.

*Ahrenholtz v. Laramie Economic Development Corp.*, 2003 WY 149, ¶ 16, 79 P.3d 511, ¶ 16 (Wyo.2003). Whether or not Mr. Goody did consult or should have consulted with Ms. Gayhart prior to dropping the common law marriage claim, Ms. Gayhart had the burden of establishing on summary judgment that a fact of legal significance existed. Without expert evidence refuting Mr. Goody's expert

opinion that the common law marriage claim was frivolous, that it was instead well founded under the law and the facts, Ms. Gayhart failed to meet her burden. Thus, we conclude the district court properly granted summary judgment for Mr. Goody on the common law marriage claim.

[¶ 24] We turn next to Ms. Gayhart's claim that Mr. Goody failed to list the audiotape as an exhibit, and thereby prevented a crucial item of evidence from being considered by the district court in deciding the duress claim. We view the facts surrounding the tape in the light most favorable to Ms. Gayhart. The audiotape contained a telephone conversation recorded on Ms. Gayhart's telephone answering machine in which Mr. Jordan berated and intimidated her. The evidence was undisputed that the telephone conversation occurred several weeks after Ms. Gayhart signed the settlement agreements at issue in the underlying case. Although Ms. Gayhart provided the tape to Mr. Goody early on in the proceedings, he did not produce it in discovery, list it as an exhibit or even listen to it until after the trial began. Then, during cross-examination of Mr. Jordan, Mr. Goody attempted to play the audiotape. Mr. Jordan's counsel objected on the ground that the tape was not listed as an exhibit or produced in discovery. Mr. Goody responded that the tape was appropriate impeachment. The district court overruled the objection and allowed the tape to be played.

[¶ 25] After the plaintiff rested his case, Mr. Goody attempted to lay foundation for introduction of the tape into evidence. Mr. Jordan's counsel objected. The district court ruled as follows:

> Well, it will not come in as evidence. You can designate it as a proposed exhibit so that it's part of the record in this case. And the record should reflect that it was played to the court and the court has heard it for the purposes of impeachment, but it was not listed as an exhibit. It's in

1. Ms. Gayhart signed an affidavit early on the malpractice case that refutes what she told the expert. In the affidavit, Ms. Gayhart stated:

4. Once [Mr.] Goody became my lawyer, I asked him if we were going to follow up on [the] idea of proving common law marriage

and he said we would not be attempting to prove common law marriage.
5. He dropped that claim because he said it would be too expensive to prove because it would cost between $14,000 and $17,000 dollars to litigate.

violation of the scheduling order and pretrial conference, it's obviously been known about for a long time, and it's grossly unfair for it to be used as an exhibit against the plaintiff, and I'm not going to consider it.

[¶ 26] Mr. Goody's expert testified that in his opinion Mr. Goody effectively used the audiotape in rebuttal to impeach Mr. Jordan's testimony in his case-in-chief. He also testified Mr. Goody's representation of Ms. Gayhart was in accordance with the standard of care. Through this expert evidence, we conclude Mr. Goody met his burden of making a prima facie showing on the issue of the audiotape that he met the standard of care for attorneys in Wyoming. The burden then shifted to Ms. Gayhart to show that a genuine issue of material fact existed as to whether Mr. Goody met the standard of care.

[¶ 27] Ms. Gayhart's expert testified that in his opinion Mr. Goody was negligent in not listing the tape as an exhibit prior to trial. However, the expert also testified that a strategy of not listing an exhibit, allowing a witness to give testimony inconsistent with the exhibit and then using the exhibit in rebuttal to demonstrate the inconsistency is within the standard of care.

[¶ 28] We have previously characterized decisions relating to the introduction of evidence as matters of judgment. About matters of judgment, we have said:

> An expert witness could not state that the standard is to do one thing or another. When the attorney's acts are a matter of judgment, the expert must simply decide whether, in his opinion, the attorney's conduct was or was not reasonable under the circumstances of the individual case. This is what the [expert] did in this case, and we conclude that his testimony adequately demonstrated [the attorney] met the standard of care for attorneys in Wyoming.

*Moore*, 855 P.2d at 1251. Both parties' experts ultimately testified that a tactical decision not to list an exhibit and to use it instead for impeachment is within the standard of care for Wyoming attorneys. Given this testimony, we are not prepared to say that the district court erred in granting summary judgment on this aspect of Ms. Gayhart's claim.

[¶ 29] Ms. Gayhart's final claim is that summary judgment was improper because genuine issues of material fact existed generally on the question whether Mr. Goody was prepared for trial. In making this argument in her appellate brief, she fails to come forward with specific facts showing how Mr. Goody was not prepared for trial, except those relating to the common law marriage claim and the audiotape that we have addressed above. The vague assertion that an attorney failed to adequately prepare for trial, without more, is insufficient to withstand summary judgment. Mr. Goody met his burden by presenting unequivocal expert evidence that his conduct did not depart from the standard of care. The expert evidence submitted by Ms. Gayhart in response failed to establish an issue of material fact on the question whether Mr. Goody's conduct did depart from the standard of care. We affirm the district court's order granting summary judgment for Mr. Goody on this legal malpractice claim.

[¶ 30] Affirmed.