**Betty M. Peulen HAVENS,**
**Appellant (Plaintiff),**

v.

**David D. HOFFMAN, M.D.,**
**Appellee (Defendant).**

No. 95–2.

Supreme Court of Wyoming.

Sept. 13, 1995.

Dan Davis, Gillette, for appellant.

W. Thomas Sullins, II and Courtney R. Kepler of Brown & Drew, Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

THOMAS, Justice.

The issue that is dispositive of this case is whether David D. Hoffman, M.D. (Dr. Hoffman) properly supported a motion for summary judgment in a case premised upon injury attributable to the lack of informed consent on the part of Betty M. Peulen Havens (Havens). Havens contends she met her burden in opposition to the motion for summary judgment by relying upon the doctrine of *res ipsa loquitur*. We hold that, had Dr. Hoffman properly supported his motion for summary judgment, Havens would be required to present expert testimony establishing the failure of Dr. Hoffman to furnish appropriate advice leading to Havens' consent. The doctrine of *res ipsa loquitur* cannot serve to overcome an appropriate showing that the standards of medical practice were met in furnishing advice to the patient in order to secure consent. We hold, however, that Dr. Hoffman failed to make the showing required by our decision in *Roybal v. Bell*, 778 P.2d 108 (Wyo.1989), to demonstrate there is no genuine issue of material fact. Havens had no obligation to produce expert testimony until Dr. Hoffman made such a showing. The Order Granting Second Motion for Summary Judgment of Defendant entered in favor of Dr. Hoffman must be reversed.

In the Appellant's Brief, Havens states the issue presented for review to be:

With regard to informed medical consent, may the doctrine *of res ipsa loquitur* be used to obviate the requirement of expert testimony?

In the Brief of Appellee David E. Hoffman, M.D., the issue presented for review is set forth as:

Whether the court below was correct in its decision granting the second summary judgment in favor of Appellee in the case based upon the dual findings that there is no genuine issue of material fact and that Appellee is entitled to judgment as a matter of law.

We apply our traditional approach to review of summary judgments, and we treat this motion for summary judgment as though it had been presented originally to this court. We pursue the examination of the case using the same materials and information made available to the trial court. *Iberlin v. TCI Cablevision of Wyoming, Inc.*, 855 P.2d 716 (Wyo.1993); *Moncrief v. Harvey*, 816 P.2d 97 (Wyo.1991). Having done that, we hold the materials submitted by Dr. Hoffman in support of his Second Motion for Summary Judgment of Defendant do not meet the standard imposed for granting his motion for summary judgment and, further, do not create any obligation on the part of Havens to produce any expert testimony until Dr. Hoffman does satisfy the *Roybal* standard.

In August of 1991, Havens was referred to Dr. Hoffman for an evaluation of an epigastric mass and pain. It appeared she had developed an incisional hernia from prior abdominal surgery. Dr. Hoffman saw Havens again in January of 1992. That consultation related to a referral for a needed left thoracotomy and open lung biopsy. At that visit, it was decided between Havens and Dr. Hoffman that he would repair the ventral hernia and that procedure and the thoracotomy would be performed under the same anesthesia. The surgical procedures were performed a week later.

During the thoracotomy, one of Havens' ribs was broken, and the costal cartilage was torn away at the costochondral junction. This injury resulted in permanent and chronic pain. Such an injury is common in connection with this surgical procedure. It results from the utilization of a rib spreader and occurs because of the necessity for providing an opening large enough to provide access for the procedure. One expert witness opined such injuries occur in more than half the cases.

Havens originally claimed in her action against Dr. Hoffman that he was negligent in performing the surgical procedure. A Mo-

tion for Summary Judgment of Defendant as to the original complaint was granted because the record was clear there was no negligence on the part of Dr. Hoffman in connection with the surgical procedure. Havens conceded the absence of negligence in performing the surgical procedures, but she sought leave to amend her complaint. In the Amended Complaint, Havens claimed Dr. Hoffman violated his duty to warn her that breaking a rib and tearing of the cartilage could result as normal and usual complications of these procedures. She also contended he had violated his duty to advise of an alternative procedure that was less hazardous. Dr. Hoffman answered the Amended Complaint and then filed a Second Motion for Summary Judgment of Defendant.

In seeking summary judgment as to the Amended Complaint, Dr. Hoffman relied upon a form entitled Consent to Operation, Administration of Anesthetics and the Rendering of Other Medical Services prepared by the Riverton Memorial Hospital. Specific reliance is placed upon paragraph three in that form which says:

3. I confirm the following: That my physician has explained to me the nature, purpose, and possible consequences of the procedure(s) as well as the risks involved, and the possible complications and/or alternative methods of treatment. I understand that the explanation I have received is not exhaustive because of unforseen circumstances that may arise and I have been advised that a more detailed and complete explanation of the preceding matter will be given to me if I so desire. Upon reading the previous statement, I do not desire such further explanations. Furthermore, I acknowledge that I have received no guarantees or assurances as to the results that may be obtained from the performance of this operation or procedure.

In addition, Dr. Hoffman relied upon his office notes which include these sentences: "Procedures, findings, indications, risks, benefits and possible complications explained to pt's satisfaction. Pt gives her informed consent for both procedures scheduled on 1/28/92." This conclusional language is repeatedly relied upon by Dr. Hoffman in connection with his Second Motion for Summary Judgment of Defendant. In her affidavit, filed in support of her Response to Defendant's Motion for Summary Judgment, Havens stated:

Neither Dr. Hoffman, nor anyone else, told that breaking a rib and tearing the cartilage could result from normal and usual complications of the surgical procedures performed.

Neither Dr. Hoffman, nor anyone else, advised me that torn cartilage may result in chronic pain, debilitating pain.

The district court entered an Order Granting Second Motion for Summary Judgment of Defendant. While the rationale is not reflected in that order, Dr. Hoffman contended he had established compliance with the standard of medical practice by expert testimony. He also relied upon *Roybal* for the proposition that it was incumbent upon the plaintiff to establish departure from the standards of medical practice by expert testimony. Havens did not rely upon the presentation of any such expert testimony, but asserted she was entitled to avoid summary judgment based upon the doctrine of *res ipsa loquitur* flowing from a series of California cases. Havens appeals from the Order Granting Second Motion for Summary Judgment of Defendant.

Both Havens and Dr. Hoffman cite to *Roybal* in their briefs. Havens appears to be unaware of the comfort that *Roybal* affords her, and Dr. Hoffman prefers to emphasize those aspects of *Roybal* that support his position. We are satisfied *Roybal* is dispositive of this summary judgment case, and the decision of the trial court must be reversed. We do not reach the claim of Havens that she is entitled to rely on the doctrine of *res ipsa loquitur*, although we confess skepticism as to its availability where the case is premised upon lack of informed consent rather than negligence in performing the health care services.

In *Roybal*, we made a careful and detailed analysis of the summary judgment process as it pertains to claims of medical malpractice based upon the absence of informed consent. We analyzed *Harris v. Grizzle*, 625 P.2d 747 (Wyo.1981); *Stundon v. Stadnik*, 469 P.2d 16

(Wyo.1970); and *Govin v. Hunter,* 374 P.2d 421 (Wyo.1962). We summarized the applicable rules:

Wyoming adheres to the majority position, known as the "traditional" or "professional" view, with respect to the required scope of disclosure. This standard provides that the physician is required to disclose only such risks that a reasonable practitioner of like training would have disclosed in the same or similar circumstances. * * * Under this standard, expert testimony is required to establish what a reasonable practitioner would disclose in the same or similar circumstances. * * *

In order to overcome a motion for summary judgment, a plaintiff in a medical malpractice case must also present evidence, usually in the form of expert testimony, indicating the departure by a medical practitioner from a recognized standard of practice was a proximate cause of her injury. *Harris,* 625 P.2d 747. A plaintiff establishes proximate cause in an informed consent case by proof that proper disclosure would have resulted in a decision against the proposed treatment or procedure. * * *

\*      \*      \*      \*      \*      \*

With the foregoing principles in mind, we look to the materials in the record to determine if genuine issues of material fact exist which would preclude the entry of summary judgment. In support of his motion for summary judgment, appellee submitted his own affidavit in which he stated that he was aware of the standard required for informed consent for dentists practicing his specialty, that he fully informed appellant of the risks associated with the apicoectomy on tooth # 20, including the risk of nerve damage, and further that this disclosure was accomplished by use of a diagram, a copy of which was attached to his affidavit.

\*      \*      \*      \*      \*      \*

In opposition to the above materials, appellant submitted the affidavit of * * * a Colorado dentist and oral surgeon. [The Colorado dentist] stated that he had reviewed the relevant materials including the affidavits and appellant's dental records and that he had personally examined appellant. * * * He then described the relevant standard:

That based upon my education, training and experience, it is my opinion that the standard of care applicable to Dr. Gregory F. Bell regarding obtaining an informed consent from Angelina Roybal to perform an apicoectomy on tooth no. 20 is as follows: a) The patient must be informed of the nature of the condition of tooth no. 20 prior to the procedure; b) The practitioner must, prior to the procedure, explain to the patient the more common risks and complications of the procedure, which risks and complications include: i) recurrent and chronic infection of the tooth and surrounding areas, ii) possible nerve damage, par[e]sthesia and hyperesthesia to the area of the tooth and the face, iii) potential loss of the tooth from failure of the treatment, and iv) possible damage to adjacent teeth requiring additional root canal treatment; c) The practitioner must, prior to the procedure, explain to the patient the options available to the patient in lieu of the apicoectomy which would be extraction of the tooth; d) The practitioner must make a written note in his charts or records that all of the above were reviewed with the patient by the practitioner and further the records or charts must reflect that the review was prior to the procedure; and e) The practitioner must, prior to the procedure, obtain a signed consent from the patient to perform the procedure * * *.

\*      \*      \*      \*      \*      \*

**Although we have described the materials submitted by appellant in opposition to the motion for summary judgment, we need not consider the sufficiency of such materials because we conclude that appellee failed to meet his initial burden of demonstrating the absence of a genuine issue of material fact.** *See Metzger v. Kalke,* 709 P.2d 414 (Wyo.1985). **The affidavits of appellee, Dr. Giovale, and Dr. Devine are defective**

in that each fails to state the prevailing standard of care by which to measure the adequacy of the consent obtained, if any. The standard of care must be stated with specificity sufficient to enable the court to determine if appellee properly disclosed the risks and alternatives in conformance with the standard. *Hurtt v. Goleburn,* 330 A.2d 134 (Del. Supr.1974). Because these supporting affidavits fail in this important respect, appellee, as movant, did not meet his initial burden of proving the nonexistence of a genuine issue of material fact.

Since appellee failed to properly support his motion for summary judgment, appellant was entitled to rely upon her allegation that she did not receive adequate information to enable her to give an informed consent, and she had no obligation to present any factual support for her allegation. *Petersen v. Campbell County Memorial Hospital District,* 760 P.2d 992 (Wyo.1988); *Metzger,* 709 P.2d 414; *Hurtt,* 330 A.2d 134. Her unrefuted allegation is sufficient to state a claim upon which relief can be granted, and the pleadings of the parties structure a question of fact as to appellee's alleged negligent failure to obtain informed consent. *Petersen,* 760 P.2d 992; *Metzger,* 709 P.2d 414.

*Roybal,* 778 P.2d at 112–14 (emphasis added).

■ Nowhere in the materials filed by Dr. Hoffman in support of his Second Motion for Summary Judgment of Defendant does there appear an articulation of the prevailing standard of care by which to measure the adequacy of the information furnished to Havens to secure her consent. *Roybal* clearly requires such an articulation. Instead, Dr.

Hoffman relies upon the conclusional statement traceable to his notes that he informed Havens of the "procedures, findings, indications, risks, benefits and possible complications." We do not know what specific statements he made, nor is there any expert testimony as to what specific advice should have been given. The *Roybal* standards were not satisfied.

■ We turn briefly to the contention that Havens waived the claim of absence of informed consent. Reliance is placed upon a hospital form that, in effect, constitutes an acknowledgment by Havens of the requisite information. It is true that consent is found in the form, but it does not assist in demonstrating the nature of the advice given that would lead to an informed consent. To the extent that it might be perceived as a release, it fails to satisfy the criteria adopted in *Milligan v. Big Valley Corp.,* 754 P.2d 1063 (Wyo.1988), and *Schutkowski v. Carey,* 725 P.2d 1057 (Wyo.1986), which includes, as a third factor, the requirement that the contract was fairly entered into. Unless the *Roybal* standards are met with respect to obtaining informed consent, we cannot conceive that the hospital form, to the extent it constitutes a contract, was fairly entered into.

The Order Granting Second Motion for Summary Judgment of Defendant is reversed.