2009 WY 20

**Brenda BANGS, Appellant (Plaintiff),**

v.

**Robert E. SCHROTH, Appellee (Defendant).**

**No. S–07–0012.**

Supreme Court of Wyoming.

Feb. 19, 2009.

---

Representing Appellant: William R. Fix and Jenna V. Mandraccia of William R. Fix, P.C., Jackson, Wyoming. Argument by Ms. Mandraccia.

Representing Appellee: Robert M. Shively and Amy M. Taheri of Shively, Taheri & Rochelle, P.C., Casper, Wyoming. Argument by Ms. Taheri.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Brenda Bangs, who claims that attorney Robert E. Schroth, Sr., undertook and then mishandled her legal representation by failing to timely commence medical malpractice litigation against two doctors, appeals the district court's grant of summary judgment to Mr. Schroth in her legal malpractice action against him. Because Mr. Schroth has not established a prima facie case entitling him to summary judgment on Ms. Bangs' claims of negligence, breach of fiduciary duty, breach of contract, negligent misrepresentation, fraud, and punitive damages, we reverse the district court's summary judgment on those claims. We dismiss, however, Ms. Bangs' claim of deceit under Wyo. Stat. Ann. § 33–5–114 because it is not legally cognizable under the undisputed facts of the case. W.R.C.P. 12(b)(6).

## ISSUES

[¶ 2] In regard to the district court's summary judgment on all claims except deceit under Wyo. Stat. Ann. § 33–5–114, the dispositive issue is whether Mr. Schroth properly supported his motion for summary judgment as required by W.R.C.P. 56 and our decisions in *Rino v. Mead*, 2002 WY 144, 55 P.3d 13 (Wyo.2002); *Havens v. Hoffman*, 902 P.2d 219 (Wyo.1995); *Roybal v. Bell*, 778 P.2d 108 (Wyo.1989); and *Greenwood v. Wierdsma*, 741 P.2d 1079 (Wyo.1987).

[¶ 3] In regard to the district court's grant of summary judgment to Mr. Schroth on Ms. Bangs' claim of deceit under Wyo. Stat. Ann. § 33–5–114, the dispositive issue is whether, as a matter of statutory interpretation, that statutory provision applies under the facts of this case.

## FACTS

[¶ 4] In the parties' appellate briefs here and their legal memoranda submitted to the district court in connection with the summary judgment proceedings there, they provide the following background information which is helpful to place the issues before us in appropriate context.

[¶ 5] On or about May 22, 2000, Ms. Bangs employed Dr. Robert Bricca in Jackson, Wyoming, for medical services in connection with her pregnancy which was then at approximately twelve to fourteen weeks. While in Dr. Bricca's care, Ms. Bangs experienced complications and was diagnosed with fulminant ulcerative colitis.[1] This medical condition required Ms. Bangs' transfer from Dr. Bricca's care to the LDS Hospital in Salt Lake City, Utah, and the medical care of Dr. Peter Bossart. Because of her medical condition and the ensuing apparent distress of her unborn infant, Ms. Bangs underwent an emergency cesarean section delivery of her twenty-six-week preterm infant before a total colectomy on August 18, 2000. In addition, Ms. Bangs underwent numerous subsequent surgical procedures resulting from her toxic megacolon secondary to chronic ulcerative colitis.

[¶ 6] Following Ms. Bangs' medical treatment, she contacted Mr. Schroth for legal

---

1. Ulcerative colitis (UC) is a disease in which the lining of the colon (the large intestine) becomes inflamed. The immune system inappropriately targets the lining of the colon, causing inflammation, ulceration, bleeding and diarrhea. The inflammation almost always affects the rectum and lower part of the colon, but it can also affect the entire colon. Patients with severe ulcerative colitis usually have a large region of the colon involved, often the entire colon. Symptoms of severe ulcerative colitis include frequent loose stools (more than 10 per day), severe abdominal cramps, fever, dehydration, and significant bleeding, frequently leading to anemia. Severe ulcerative colitis can lead to rapid weight loss. Fulminant ulcerative colitis is a worsening of severe ulcerative colitis that causes a high white blood cell count, loss of appetite, and severe abdominal pain. *See* http://www.uptodate.com/patients/index.html and enter fulminant ulcerative colitis in the search box.

representation in medical malpractice litigation against Dr. Bricca and Dr. Bossart. Mr. Schroth drafted the complaints against the doctors. Mr. Schroth never filed the complaint against Dr. Bossart, and the statute of limitations ran on that claim. On September 26, 2003, the district court dismissed the claim against Dr. Bricca, which had been filed, because he had not been timely served with the complaint before the statute of limitations ran on that claim.

[¶ 7] On February 7, 2005, Ms. Bangs filed suit against Mr. Schroth, alleging claims of negligence (Count I), breach of fiduciary duty (Count II), breach of contract (Count III), negligent misrepresentation (Count IV), fraud (Count V), deceit under Wyo. Stat. Ann. § 33–5–114 (County VI), and punitive damages (Count VII). In pertinent part in her complaint, she alleged that in December 2000, she contacted Mr. Schroth to represent her in a medical malpractice case for injuries and medical problems arising out of her pregnancy and the subsequent birth of her child; Mr. Schroth agreed to competently and zealously perform his duties as her legal counsel; an attorney-client relationship existed between Ms. Bangs and Mr. Schroth; and Mr. Schroth told her that his team in San Diego would undertake to review and prosecute her claims against all responsible parties and Mr. Schroth assured her that she had a viable case.

[¶ 8] On April 27, 2005, Mr. Schroth filed his answer to Ms. Bangs' complaint, generally denying her claims and liability. On November 9, 2005, District Court Judge Nancy J. Guthrie assigned the case to District Court Judge Dennis L. Sanderson, who held a scheduling conference on December 6, 2005, and filed the scheduling order on December 16, 2005. In that scheduling order, the trial judge ordered, among other matters, Ms. Bangs' designation of expert witnesses to be made by March 15, 2006; Mr. Schroth's designation of expert witnesses to be made by May 1, 2006; discovery cut-off to be on October 23, 2006; dispositive motions to be filed on or before September 15, 2006; pre-trial conference to be held on October 23, 2006; and jury trial to commence on November 13, 2006.

[¶ 9] On December 27, 2005, eleven days after the filing of the district court's scheduling order, Mr. Schroth filed his motion for summary judgment. In support of his motion, he relied on his own affidavit, the affidavits of Dr. Bricca and Dr. Bossart, and a legal memorandum. On December 30, 2005, the district court filed its order setting Mr. Schroth's motion for summary judgment for hearing on February 3, 2006. On January 10, 2006, Ms. Bangs filed several motions, seeking, among other matters, enlargement of time to respond to Mr. Schroth's motion; vacation of the motion hearing on February 3, 2006; supplementation of the record with depositions and affidavits as discovery progressed; and striking of the affidavits of Dr. Bricca and Dr. Bossart because they were self-serving and conclusory. On January 12, 2006, the district court held a hearing on Ms. Bangs' several motions; and on January 13, 2006, the district court filed its order denying those motions.

[¶ 10] On January 17, 2006, Ms. Bangs filed a legal memorandum in opposition to Mr. Schroth's motion for summary judgment. In support of her opposition to that motion, she attached to her legal memorandum the affidavit of Henry F. Bailey, Jr., an attorney; Ms. Bangs' deposition taken in her failed litigation against Dr. Bricca; Ms. Bangs' affidavit; and District Court Judge Nancy J. Guthrie's order dated September 26, 2003, dismissing Ms. Bangs' litigation against Dr. Bricca. On January 30, 2006, Mr. Schroth filed his reply to Ms. Bangs' opposition to his motion for summary judgment. On February 1, 2006, Ms. Bangs filed Mr. Schroth's deposition which she had taken on January 12, 2006. On February 3, 2006, the district court judge held the hearing on Mr. Schroth's motion for summary judgment.

[¶ 11] On May 15, 2006, the district court judge filed the order granting Mr. Schroth's motion for summary judgment on Ms. Bangs' claims for negligence (Count I), breach of fiduciary duty (Count II), breach of contract (Count III), fraud (Count V), and punitive damages (Count VII). In regards to Ms. Bangs' claims of negligent misrepresentation (Count IV) and deceit under Wyo. Stat. Ann. § 33–5–114 (Count VI), the district court

judge desired "further briefing and consideration of the causal requirements and the quantity of injury, if any," informing the parties that they may submit additional motions and briefs.[2] In the district court's order granting summary judgment on these five claims, the district court judge explained his ruling as follows:

Following a review of the pleadings, briefs and supporting materials, and having heard the argument of counsel, the court **FINDS:**

1. The elements in a legal malpractice case are: (1) the accepted standard of [legal] care or practice, (2) that the [lawyer's] conduct departed from the standard, and (3) that [the lawyer's] conduct was the legal cause of the injuries suffered. *Moore v. Lubnau,* [855] P.2d 1245 (Wyo.1993)[.]

2. A fact is material if it establishes or refutes an essential element of a claim or defense. *Tidwell v. HOM, Inc.* 896 P.2d 1322, 1324 (Wyo.1995)[.]

3. Defendant has definitively made a showing of undisputed, uncontroverted material fact with respect to element number (3) by refuting ... "that [the lawyer's] conduct was the legal cause of the injuries suffered." Defendant has produced affidavits negating the viability of the underlying medical malpractice action. Even viewing all of the evidence in the light most favorable to the plaintiff, no material facts which establish the essential element of causation appear in the record before this Court.

4. Plaintiff attached no affidavits of physicians attesting to medical negligence in the underlying medical malpractice case, as required to rebut the Affidavits of Drs. Bricca and Bossart. Plaintiff has not provided the Court with affidavits or other competent evidence which would give rise to a genuine issue of material fact with regard to this element.

5. The mere fact of injury or the occurrence of a bad result, standing alone, is no proof of negligence in the ordinary mal-

practice action. *Harris v. Grizzle,* 625 P.2d 747 (Wyo.1981)[.]

6. It has long been established in Wyoming that a medical malpractice claim in almost all cases, and certainly in a case such as the plaintiff's concerning obstetrical care, a qualified medical expert is essential to establishing a viable claim of medical malpractice. *Harris v. Grizzle, Supra.*

7. There is no genuine issue of material fact on the subject of legal causation upon which this matter can proceed.

8. Summary judgment should follow upon Counts I, II, III, V and VII of the plaintiff's complaint.

[¶ 12]  On July 24, 2006, Mr. Schroth filed his motion for summary judgment on Ms. Bangs' remaining claims of negligent misrepresentation (Count IV) and deceit under Wyo. Stat. Ann. § 33–5–114 (Count VI), supporting the motion with a legal memorandum and his own affidavit which he had filed in his first motion for summary judgment.  On September 5, 2006, Ms. Bangs filed her legal memorandum in opposition to Mr. Schroth's motion, supported by much of the record developed in the first summary judgment proceeding.  Mr. Schroth filed his reply legal memorandum on September 19, 2006.  On November 16, 2006, the district court judge filed his order granting Mr. Schroth's motion for summary judgment and dismissed Ms. Bangs' complaint with prejudice.  Ms. Bangs timely filed her notice of appeal of the district court's orders granting summary judgment to Mr. Schroth.

### *Summary Judgment Law*

A.  Procedure

[¶ 13]  In light of the issues in this case, summary judgment procedure is governed by the following language of W.R.C.P. 56(b), (c), and (e):

(b) *For defending party.*—A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or

---

**2.** Under W.R.C.P. 54(b), the district court's order adjudicated fewer than all of Ms. Bangs' claims

and was not, therefore, a final, appealable order.

without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) *Motion and proceedings thereon.*—... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, *together with the affidavits,* if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

\* \* \* \*

(e) *Form of affidavits; further testimony; defense required.—Supporting* and opposing *affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.* The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. *When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,* but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(Emphasis added.)

B. Case Law under W.R.C.P. 56(b), (c), and (e)

[¶ 14] This Court has well-settled case law under W.R.C.P. 56(b), (c), and (e) which is particularly applicable to the issues in this case. In *Greenwood v. Wierdsma,* 741 P.2d 1079 (Wyo.1987), a medical malpractice action filed by Ms. Greenwood against a hospital and an obstetrical doctor for injuries she allegedly received under their care in connection with the birth of her child, the hospital moved for summary judgment with supporting affidavits of a nurse and a hospital administrator. The affidavit of the hospital administrator stated:

1. That he is the Executive Director of Memorial Hospital of Sweetwater County, Rock Springs, Wyoming, and makes this Affidavit in behalf of said hospital, a defendant in the above-entitled case.

2. That affiant has *examined the records* of Memorial Hospital of Sweetwater County as they existed on November 25, 1983, and finds that Dr. J.G. Wierdsma was a physician duly licensed to practice in the State of Wyoming, who had been granted privileges to practice in Memorial Hospital of Sweetwater County, Rock Springs, Wyoming; that *there was nothing in said records* to indicate that Dr. Wierdsma was not qualified to act as an obstetrician and gynecologist or that he should not be allowed to be the attending physician in childbirth cases.

3. To the contrary, *the records reflect* that Dr. Wierdsma was a qualified obstetrician-gynecologist who had in the past and was able to provide proper pre and post natal care, as well as deliver babies.

4. Based on my experience as a hospital administrator *and the records pertaining to Dr. Wierdsma,* it is my opinion that the Hospital acted with the applicable standard of care in the above case; was not negligent in any manner; and exercised the skill, diligence and knowledge, and applied the means and methods which would be exercised and applied under similar circumstances by hospitals.

*Id.* at 1085 (emphasis in original). The affidavit of the nurse stated:

4. I have *reviewed the medical records* of the Plaintiff, Betty Greenwood, relative to her stay at the Memorial Hospital of Sweetwater County, as well as Riverton Memorial Hospital.

5. It appears that on November 24, 1983[,] the Plaintiff was admitted to Memorial Hospital of Sweetwater County for the delivery of a child.

6. In connection with that admission, the plaintiff did deliver a baby girl.

7. As a result of the labor progressing quickly at its later stages, it became necessary for the nurse on duty to ultimately deliver the baby. Almost immediately thereafter, care of the mother was turned over to Dr. Wierdsma.

8. That the mother received a first degree laceration as a result of the delivery. That the laceration was taken care of by Dr. Wierdsma.

9. That the Plaintiff was thereafter discharged on November 25, 1983.

10. From *my review of the records,* it appears that the assessments made and the care and treatment rendered by the nursing staff at Memorial Hospital of Sweetwater County to the Plaintiff were proper in all respects. In that regard, it is my opinion that the nursing staff of Memorial Hospital of Sweetwater County exercised the skill, diligence and knowledge and applied the means and methods which would reasonably be exercised and applied under similar circumstances by members of the nursing profession in good standing.

*Id.* (emphasis in original). Ms. Greenwood moved to strike the two affidavits, contending they did not conform to W.R.C.P. 56(e) which requires the affiant to state facts within personal knowledge and to attach to the affidavit those documents in support of those facts on which the affiant is relying. The district court denied Ms. Greenwood's motion to strike the two affidavits and granted the hospital's summary judgment motion based on the challenged affidavits. *Id.* at 1082.

[¶ 15] On appeal, we reversed the district court's summary judgment order, ruling that the district court erred by relying upon, rather than sustaining Ms. Greenwood's motion to strike, the two affidavits which supported the hospital's summary judgment motion. *Id.* at 1086. Noting that compliance with the rules of summary judgment procedure is mandatory, we examined the two affidavits in light of the requirements of W.R.C.P. 56(e) that an affidavit (1) be made on personal knowledge, (2) set forth facts which are admissible in evidence, (3) demonstrate the affiant's competency to testify on the subject matter of the affidavit, and (4) have attached to the affidavit the papers and documents to

which it refers. *Id.* at 1084–85. After setting out the contents of the hospital administrator's affidavit, we found that the affidavit fell short of W.R.C.P. 56(e) in two respects, namely, (1) the documents the affiant reviewed and to which he referred were not attached to his affidavit, and (2) his affidavit set forth no facts and merely made categorical assertions and stated bald conclusions. *Id.* at 1085. Addressing the nurse's affidavit, we set out the contents of her affidavit and found that it also suffered from both the defects present in the hospital administrator's affidavit, namely, (1) the records to which the affiant referred were not attached, and (2) the factual basis for the conclusions in her affidavit was absent. *Id.* We found that none of the general facts about Ms. Greenwood's case contained in the affidavit was relevant to or supported by conclusion and opinion that the hospital exercised reasonable care. We remarked that the nurse failed to explain what happened, why Ms. Greenwood's present condition resulted, and what hospital supervision and care existed. *Id.* at 1086. We stated, "When stripped of their unsupported conclusions, the affidavits . . . in no way assist the hospital's claim for summary judgment." *Id.* We held that, "The affidavits should have been stricken or at least disregarded, and the district court's failure to do so was error." *Id.* Because the two affidavits were insufficient and ineffectual, Ms. Greenwood was entitled to rest upon the allegations in her complaint. *Id.*

[¶ 16] In *Roybal v. Bell,* 778 P.2d 108 (Wyo.1989), a dental malpractice action, we again considered the adequacies of affidavits in light of the requirements of W.R.C.P. 56. Ms. Roybal filed her action against three dentists, including Dr. Bell. The other two dentists later dropped out of the litigation, leaving Dr. Bell. He answered the complaint, generally denying Ms. Roybal's allegations. He subsequently filed a motion for summary judgment supported by, among other material, his own affidavit; the affidavit of Dr. Giovale, one of the two other dentists and who had earlier settled out of the litigation; and the affidavit of Dr. Devine. At the summary judgment hearing, Ms. Roybal dropped all claims against Dr. Bell except

the claim relating to his alleged failure to obtain an informed consent in connection with the oral surgical procedure known as an apicoectomy on one of Ms. Roybal's teeth. *Id.* at 110. Dr. Bell's affidavit stated

> that he was aware of the standard required for informed consent for dentists practicing his specialty, that he fully informed appellant of the risks associated with the apicoectomy on tooth # 20, including the risk of nerve damage, and further that this disclosure was accomplished by use of a diagram, a copy of which was attached to his affidavit.

*Id.* at 113. Dr. Bell's affidavit did not delineate, however, what the applicable standard of disclosure required under the circumstances. Dr. Giovale's affidavit stated

> he was fully familiar with the standard of care required of dentists with regard to the disclosures necessary for informed consent in referral situations and that, prior to referring [Ms. Roybal] to [Dr. Bell] for the apicoectomy on tooth # 20, he discussed with her the specific risks involved, including the possibility of nerve injury and paresthesia. Dr. Giovale attached to his affidavit a copy of his office charts with notations indicating he had apprised [Ms. Roybal] of possible nerve injury and paresthesia on this occasion.

*Id.* Dr. Giovale's affidavit did not delineate, however, what the applicable standard of disclosure required under the circumstances. In his affidavit, Dr. Devine, a dentist, stated

> he had reviewed [Ms. Roybal's] dental records and other relevant materials in the record, including the pleadings, the affidavits of [Dr. Bell] and Dr. Giovale, and an outline of [Ms. Roybal's] deposition. Dr. Devine said he was familiar with the applicable standard of care, although, as with the affidavits of [Dr. Bell] and Dr. Giovale, Dr. Devine did not delineate what the applicable standard of disclosure required under the circumstances. Thus, without stating what the standard of care required, Dr. Devine stated that, in treating [Ms. Roybal], [Dr. Bell] exercised that degree of care ordinarily possessed and exercised by dentists in good standing practicing in the community or elsewhere. With respect to

the question of proximate cause, Dr. Devine stated: "It is unreasonable to believe that a patient being fully informed would have elected any other procedure."

*Id.* The district court granted Dr. Bell's summary judgment motion. On appeal, we reversed and remanded for further proceedings because the affidavits

> are defective in that each fails to state the prevailing standard of care by which to measure the adequacy of the consent obtained, if any. The standard of care must be stated with specificity sufficient to enable the court to determine if appellee properly disclosed the risks and alternatives in conformance with the standard. *Hurtt v. Goleburn,* 330 A.2d 134 (Del. Supr.1974). Because these supporting affidavits fail in this important respect, appellee, as movant, did not meet his initial burden of proving the nonexistence of a genuine issue of material fact.
>
> Since appellee failed to properly support his motion for summary judgment, appellant was entitled to rely upon her allegation that she did not receive adequate information to enable her to give an informed consent, and she had no obligation to present any factual support for her allegation. *Petersen v. Campbell County Memorial Hospital District,* 760 P.2d 992 (Wyo.1988); *Metzger [v. Kalke],* 709 P.2d 414 [ (Wyo.1985) ]; *Hurtt,* 330 A.2d 134. Her unrefuted allegation is sufficient to state a claim upon which relief can be granted, and the pleadings of the parties structure a question of fact as to appellee's alleged negligent failure to obtain informed consent. *Petersen,* 760 P.2d 992; *Metzger,* 709 P.2d 414.

*Roybal,* 778 P.2d at 114.

[¶ 17]   In *Havens v. Hoffman,* 902 P.2d 219 (Wyo.1995), a medical malpractice action, Ms. Havens alleged injury attributable to Dr. Hoffman's alleged failure to obtain her informed consent in connection with certain surgical procedures he had performed on her. In seeking summary judgment against that claim, Dr. Hoffman relied upon Ms. Havens' signed consent form prepared by the hospital in which the surgery was performed, and Dr. Hoffman's office notes. Dr. Hoff-

man placed specific reliance upon the following paragraph in the consent form:

3. I confirm the following: That my physician has explained to me the nature, purpose, and possible consequences of the procedure(s) as well as the risks involved, and the possible complications and/or alternative methods of treatment. I understand that the explanation I have received is not exhaustive because of unforeseen circumstances that may arise and I have been advised that a more detailed and complete explanation of the preceding matter will be given to me if I so desire. Upon reading the previous statement, I do not desire such further explanations. Furthermore, I acknowledge that I have received no guarantees or assurances as to the results that may be obtained from the performance of this operation or procedure.

*Id.* at 221. Dr. Hoffman's office notes contained the following sentences upon which he relied:

Procedures, findings, indications, risks, benefits and possible complications explained to pt's satisfaction. Pt gives her informed consent for both procedures scheduled on 1/28/92.

*Id.* The district court granted Dr. Hoffman's summary judgment motion, but the order did not reflect the court's rationale. *Id.*

[¶ 18] On appeal, we applied and found dispositive the *Roybal* analysis and reversed the summary judgment. We wrote:

Nowhere in the materials filed by Dr. Hoffman in support of his Second Motion for Summary Judgment of Defendant does there appear an articulation of the prevailing standard of care by which to measure the adequacy of the information furnished to Havens to secure her consent. *Roybal* clearly requires such an articulation. Instead, Dr. Hoffman relies upon the conclusional statement traceable to his notes that he informed Havens of the "procedures, findings, indications, risks, benefits and possible complications." We do not know what specific statements he made, nor is there any expert testimony as to what

specific advice should have been given. The *Roybal* standards are not satisfied. *Id.* at 223.

[¶ 19] In *Rino v. Mead*, 2002 WY 144, 55 P.3d 13 (Wyo.2002), a legal malpractice action, Ms. Rino alleged several violations of professional duties by her attorney in connection with her divorce litigation. In support of the attorney's summary judgment motion, the attorney submitted, among other material, her expert witness's affidavit. The district court granted the attorney's summary judgment motion because it found that the attorney's submittals established a prima facie case that the attorney was not negligent. On appeal, we reversed the summary judgment because the submittals, including the expert witness's affidavit, did not establish the absence of genuine issues of material fact, and, therefore, the burden did not shift to Ms. Rino to produce expert testimony. *Id.*, ¶ 22, 55 P.3d at 20. Although this Court did not quote the expert witness's affidavit, it commented upon its shortcomings in this passage:

The affidavit of Mead's expert does contain some facts in substantiation of its conclusion that Mead's conduct did not fall below the standard of care. For instance, the affidavit cites to correspondence that shows Mead had considered the value of McCalla's law practice, as well as the issue of alimony. Beyond that, however, the affidavit does not counter Rino's other factual allegations that Mead failed to hire accountant and attorney experts as promised, failed to prepare for the mediation session, failed to prepare for the trial, and failed to give correct advice as to the treatment of McCalla's retirement account in the property division. With these issues of material fact remaining, Mead's expert's opinion that Mead "acted in a reasonable, careful and prudent manner with respect to her representation of" Rino is simply premature.

*Id.*

C. Appellate Standards of Review of Summary Judgment

[¶ 20] Our standards for reviewing the district court's order granting sum-

mary judgment are well established. We treat the summary judgment movant's motion as though it has been presented originally to us. *Havens*, 902 P.2d at 220. We use the same materials in the record that was before the district court. *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶ 8, 148 P.3d 8, 12 (Wyo.2006). Using the materials in the record, we examine them from the vantage point most favorable to the nonmoving party opposing the motion, giving that party the benefit of all favorable inferences which may fairly be drawn from the materials. *Rino*, ¶ 12, 55 P.3d at 17. Summary judgments are especially not favored in professional malpractice actions, whether legal or medical. *Jacobson v. Cobbs*, 2007 WY 99, ¶ 7, 160 P.3d 654, 656–57 (Wyo.2007); *Gayhart v. Goody*, 2004 WY 112, ¶ 12, 98 P.3d 164, 168 (Wyo. 2004). We subject such actions to more exacting scrutiny. *Id.* If doubt exists about the presence of genuine issues of material fact after we have reviewed the record, we resolve that doubt against the movant. *Jacobson*, ¶ 7, 160 P.3d at 656. The nonmoving party opposing the summary judgment motion has no obligation to counter the motion with materials beyond the pleadings until the movant has made a prima facie showing that genuine issues of material fact do not exist. *Rino*, ¶ 23, 55 P.3d at 20. We review questions of law *de novo* without giving any deference to the district court's determinations. *Hatton*, ¶ 8, 148 P.3d at 12.

[¶ 21] Mindful of these foregoing principles of summary judgment law and our standards of review applicable to a district court's order granting summary judgment, we will now apply those principles and standards to the materials in this record to determine whether Mr. Schroth was entitled to have summary judgment entered in his favor in this case.

[¶ 22] As noted above in the recitation of facts, Mr. Schroth supported his summary judgment motion with his own affidavit, the affidavit of Dr. Bricca, and the affidavit of Dr. Bossart. We shall now examine each affidavit in light of the well-established principles of summary judgment law identified earlier in this opinion.

■ [¶ 23] Mr. Schroth's affidavit states:

1. I am a general practice attorney, fully licensed to practice in the State of Wyoming.

2. I am familiar with the standard of care applicable to general practice attorneys practicing in the State of Wyoming.

3. A copy of my resume is attached to this Affidavit and fully sets out my education and experience in the practice of law.

4. I am familiar with the applicable standards of care for review of medical malpractice cases such as that I provided for Brenda Bangs.

5. It is my professional opinion that I acted within the applicable standard of care relative to my review of, decision to not undertake prosecution of, and subsequent return to the client, of Brenda Bangs' potential medical malpractice case. My opinion is based on my education and experience as described above, as well as my consultation with medical experts.

6. It is also my opinion that no attorney-client relationship ever existed between myself and Ms. Bangs.

7. It is further my opinion that I referred Brenda in a timely manner to other attorneys who might take her case, and informed Ms. Bangs that I was unwilling to take it myself. I properly advised Ms. Bangs that her pro se complaint needed to be served within sixty days of filing it in order to preserve the statute of limitations.

8. It is my opinion, based upon my education, training and experience, and consultation with experts, that the physicians Brenda Bangs sought to sue, met the standard of care in all respects in their care of Brenda and her child.

9. I am also of the opinion that no action or inaction on my part caused or contributed to Brenda Bangs' alleged damages in this lawsuit, for the reason stated in paragraph seven above.

■ [¶ 24] Mr. Schroth's affidavit is inadequate in several respects. He fails to state what the standard of care is in paragraphs two and four. He fails to attach a copy of his resume as he stated in paragraph three. He fails to state specific facts about

his interaction and conduct with Ms. Bangs, and states only categorical assertions of ultimate facts without supporting facts in paragraphs five, six, seven, and nine. Incredibly, in paragraph eight, he offers a medical opinion "that the physicians Brenda Bangs sought to sue ... met the standard of care in all respects in their care of Brenda and her child." No evidence exists that Mr. Schroth is competent to testify about medical matters; only an expert witness is competent to testify about them. *Smyth v. Kaufman*, 2003 WY 52, ¶ 27, 67 P.3d 1161, 1169 (Wyo. 2003); *Harris v. Grizzle*, 625 P.2d 747, 751 (Wyo.1981). In regard to Mr. Schroth's bald conclusion in paragraph six that no attorney-client relationship even existed between Ms. Bangs and him, we recall these words:

> Determining the existence of an attorney-client relationship "depends on the facts and circumstances of each case" and "may be implied from the conduct of the parties, such as the giving of advice or assistance, or such as failing to negate the relationship when the advice or assistance is sought if the attorney is aware of the reliance on the relationship." *Chavez v. State*, 604 P.2d 1341, 1346 (Wyo.1979), *cert. denied* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980). The determination of whether there is an attorney-client relationship is one of fact and, typically, is for the trier of fact and cannot be resolved by summary judgment. 2 R.E. Mallen and J.M. Smith, *Legal Malpractice* §§ 27.10, 27.22 (3d ed.1989).

*Meyer v. Mulligan*, 889 P.2d 509, 513–14 (Wyo.1995). The district court erred when it did not strike Mr. Schroth's affidavit.

[¶ 25] Next, we examine Dr. Bricca's affidavit. Dr. Bricca states:

1. I am a family practice physician, residing near, and practicing in Jackson, Wyoming.

2. I am familiar with the standard of care applicable to family practice physicians practicing nationally as well as in the State of Wyoming.

3. A copy of my Curriculum Vitae is attached to this Affidavit and fully sets out my training and experience in the field of family practice.

4. I am familiar with the applicable standards of prenatal obstetrical care such as that I provided to Brenda Bangs.

5. I am also familiar with the applicable standards of care for colon problems such as Brenda Bangs suffered during her pregnancy.

6. In preparation for my opinions, I have reviewed the following:

A. LDS Hospital medical records for Brenda Bangs for her hospitalization of August 10, 2000, through September 10, 2000.

B. St. John's Hospital medical records for Brenda Bangs for her hospitalization from August 8, 2000[,] through August 10, 2000.

C. Medical records pertaining to Brenda Bangs from my own office chart dated May 22, 2000[,] through August 22, 2000.

7. I am aware of the standard of care for family practice physicians performing the type of care rendered by myself to Brenda Bangs during her pregnancy in 2000.

8. After reviewing the materials listed above, it is my opinion, to a reasonable degree of medical probability, that I acted within the applicable standard of care relative to the care rendered to Brenda Bangs between May 22, 2000, and August 10, 2000, when she was transferred to LDS Hospital in Salt Lake City for care throughout the remainder of her pregnancy. My opinion is based upon my experience, training, and review of the medical records.

9. It is further my opinion to a reasonable degree of medical probability that I referred Brenda in a timely manner to an appropriate specialist, Dr. Peter Bossart, a colorectal surgeon in Salt Lake City, UT.

10. On July 25, 2000, I wrote a letter of referral to Peter Bossart, M.D., for Brenda Bangs. On August 8, 2000, colonoscopy was performed by George Waterhouse, M.D., at St. John's Hospital, with a diagnosis of fulminant ulcerative colitis. On August 10, 2000, Brenda Bangs was transferred to LDS Hospital in the care of Bill Hudson, M.D., gastroenterologist. She was seen in consultation by Peter Bossart,

M.D., and Joe Eyring, M.D., as well as the perinatology service at the University of Utah Medical Center. On August 18, 2000, Brenda underwent a Cesarean section delivery of her child prior to a total colectomy. I was told at this time that she would require at least three more procedures. Brenda's medical records indicate that prior to the Cesarean delivery of the baby, the perinatologist who evaluated Brenda found indications that the baby appeared to be in distress.

11. I am of the opinion, which I hold to a reasonable degree of medical probability, that the cause of Brenda Bangs' pregnancy complications which necessitated the preterm delivery of her child and her numerous subsequent surgical procedures, was toxic megacolon secondary to chronic ulcerative colitis, and were in no way preventable by myself.

11. [sic] It is further my opinion, to a reasonable degree of medical probability, that no action or inaction on my part caused or contributed to Brenda Bangs' pregnancy complications, need for surgeries related to her ulcerative colitis, or present condition.

■■■ [¶ 26] Dr. Bricca's affidavit is inadequate in several respects. He fails to state the applicable standard of care for family practice physicians in paragraph two; the applicable standards of prenatal obstetrical care in paragraph four; and the applicable standards of care for colon problems like Ms. Bangs suffered during her pregnancy in paragraph five. He fails to state specific facts concerning Ms. Bangs' medical problems and his treatment of those problems; instead he merely makes categorical assertions and states bald conclusions. He fails to attach the medical records to which he refers and also fails to attach a copy of his curriculum vitae to which he refers. In paragraph ten, he has included inadmissible hearsay ("I was told") from an unidentified source. As our precedent makes clear, for an expert's affidavit to meet W.R.C.P. 56(e)'s requirements, it must state in detail what Ms. Bangs' medical condition and problems were, what actions a physician in good standing in the community would undertake under similar circumstances, and what actions were taken by the physicians in question. If we do not know these matters, we cannot determine whether the physicians in question acted in accordance with the prevailing standard of care as they claim to have done. The district court erred when it did not strike Dr. Bricca's affidavit.

■■■ [¶ 27] Finally, we examine Dr. Bossart's affidavit. Dr. Bossart states:

1. I am a colorectal surgeon, residing near, and practicing in Salt Lake City, Utah.

2. I am familiar with the standard of care applicable to colorectal surgeons practicing nationally as well as in the State of Utah.

3. A copy of my Curriculum Vitae is attached to this Affidavit and fully sets out my training and experience in the field of colorectal surgery.

4. I am familiar with the applicable standards of care for colon problems such as Brenda Bangs suffered during her pregnancy.

6. [sic] In preparation for my opinions, I have reviewed the following:

A. LDS Hospital medical records for Brenda Bangs for her hospitalization of August 10, 2000, through September 10, 2000.

B. St. John's Hospital medical records for Brenda Bangs for her hospitalization from August 8, 2000[,] through August 10, 2000.

C. Medical records pertaining to Brenda Bangs from my own office chart.

7. I am aware of the standard of care for colorectal surgeons performing the type of care rendered by myself to Brenda Bangs during her pregnancy in 2000.

8. After reviewing the materials listed above, it is my opinion, to a reasonable degree of medical probability, that I acted within the applicable standard of care relative to the care rendered to Brenda Bangs in July and August of 2000, when she was transferred to LDS Hospital in Salt Lake City for care throughout the remainder of her pregnancy. My opinion is based upon my experience, training, and review of the medical records.

9. In July of 2000, I received a letter of referral from Dr. Bricca for Brenda Bangs and subsequently saw her in my office on one occasion. On August 8, 2000, colonoscopy was performed by George Waterhouse, M.D., at St. John's Hospital, with a diagnosis of fulminant ulcerative colitis. On August 10, 2000, Brenda Bangs was transferred to LDS Hospital in the care of Bill Hudson, M.D., gastroenterologist. She was seen in consultation by myself and Joe Eyring, M.D., as well as the perinatology service at the University of Utah Medical Center. On August 18, 2000, Brenda underwent a Cesarean section delivery of her child prior to a total colectomy. Brenda's medical records indicate that prior to the Cesarean delivery of the baby, the perinatologist who evaluated Brenda found indications that the baby appeared to be in distress.

11. [sic] I am of the opinion, which I hold to a reasonable degree of medical probability, that the cause of Brenda Bangs' pregnancy complications which necessitated the preterm delivery of her child and her numerous subsequent surgical procedures, was toxic megacolon secondary to chronic ulcerative colitis, and were in no way preventable by myself.

11. It is further my opinion, to a reasonable degree of medical probability, that no action or inaction on my part caused or contributed to Brenda Bangs' pregnancy complications, need for surgeries related to her ulcerative colitis, or present condition.

[¶ 28] Dr. Bossart's affidavit suffers from the same defects present in Dr. Bricca's affidavit. He fails to state the standard of care applicable to colorectal surgeons practicing nationally as well as in the State of Utah in paragraph two and the applicable standard of care for colon problems such as Ms Bangs suffered during her pregnancy in paragraphs four and seven. He fails to state specific facts concerning Ms. Bangs' medical problems and his treatment of those problems; instead, he merely makes categorical assertions and states bald conclusions. He fails to attach the medical records to which he refers and also fails to attach a copy of his curriculum vitae to which he refers. He fails to

attach a letter from Dr. Bricca to which he refers in paragraph nine. The district court erred when it did not strike Dr. Bossart's affidavit.

[¶ 29] Because the affidavits of Mr. Schroth, Dr. Bricca, and Dr. Bossart were legally insufficient under W.R.C.P. 56(e), Ms. Bangs was entitled to rest upon the allegations contained in her complaint. In the absence of legally sufficient supporting affidavits, the motion for summary judgment must be confined to a decision under W.R.C.P. 12(b)(6), dismissal for failure . to state a claim. *Greenwood*, 741 P.2d at 1086; *Landmark, Inc. v. Stockmen's Bank & Trust Co.*, 680 P.2d 471, 473–75 (Wyo.1984). Although we are prepared to hold that Ms. Bangs' complaint states causes of action in all counts except the claim of deceit under Wyo. Stat. Ann. § 33–5–114, Mr. Schroth contends that, in regard to Ms. Bangs' negligent misrepresentation claim, Mr. Schroth's alleged misrepresentations are non-actionable statements of future intention as recognized in *Birt v. Wells Fargo Home Mortgage, Inc.*, 2003 WY 102, ¶¶ 47–48, 75 P.3d 640, 657–58 (Wyo.2003). Because we have struck Mr. Schroth's several legally insufficient affidavits and Ms. Bangs had no obligation to file opposing evidentiary material, the cold record before us is in no condition to support Mr. Schroth's argument on this point. Precisely ascertaining whether a statement is one of present `fact or future intention is often a difficult task even on a complete record. Here, the full evidence of the conversations between Ms. Bangs and Mr. Schroth remains to be developed on the record. That record development may well reveal what statements were made by Mr. Schroth and how Ms. Bangs as the recipient reasonably understood them under the circumstances. As the matter presently stands, we feel the better course is to remand on the negligent misrepresentation claim so that full discovery may take place and the record fully developed.

[¶ 30] We now turn to Ms. Bangs' claim of deceit under Wyo. Stat. Ann. § 33–5–114 and whether it is vulnerable to dismissal under W.R.C.P. 12(b)(6).

### Deceit Under Wyo. Stat. Ann. § 33–5–114

[¶ 31]   The Wyoming Legislature has provided:

> An attorney and counselor who is guilty of deceit or collusion, or consents thereto, with intent to deceive a court or judge, or a party to an action or proceeding, or brings suit or commences proceedings without authority therefore, is liable to be disbarred, and shall forfeit to the injured party treble damages, to be recovered in a civil action.

Wyo. Stat. Ann. § 33–5–114 (LexisNexis 2007).

[¶ 32]   In order to determine whether Ms. Bangs' averments about Mr. Schroth's conduct fit the statutory language, we must apply our well-established standard of review applicable to statutory language. That standard is:

> "Questions of statutory interpretation are matters of law." *Chevron U.S.A., Inc. v. Dep't of Revenue,* 2007 WY 43, ¶ 10, 154 P.3d 331, 334 (Wyo.2007), citing *Powder River Coal Co. v. Wyo. Dept. of Revenue,* 2006 WY 137, ¶ 9, 145 P.3d 442, 446 (Wyo. 2006). In interpreting statutes, our task is to give effect to the legislature's intent. We look first to the plain meaning of the language chosen by the legislature and apply that meaning if the language is clear and unambiguous. "A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability." *RME Petroleum Co. v. Wyo. Dep't of Revenue,* 2007 WY 16, ¶ 25, 150 P.3d 673, 683 (Wyo.2007). "All statutes must be construed in *pari materia;* and in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony." *State ex rel. Dep't of Revenue v. UPRC,* 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo.

2003).   *See also, Lance Oil & Gas Co. v. Wyo. Dep't of Revenue,* 2004 WY 156, ¶ 4, 101 P.3d 899, 902 (Wyo.2004).   If, however, the wording of a statute is ambiguous or capable of varying interpretations, we employ well-accepted rules of statutory construction.   *Chevron,* ¶ 10, 154 P.3d at 334.

*State Dep't of Corrections v. Watts,* 2008 WY 19, ¶ 13, 177 P.3d 793, 796 (Wyo.2008).

[¶ 33]   As we read the language of this statute, our attention focuses on the words "with intent to deceive ... a party to an action or proceeding...." We hold that those words are clear and unambiguous and their meaning is that the alleged deceit must occur in the context of an existing judicial action or proceeding.   Other jurisdictions interpreting similarly worded statutory language have reached the same conclusion. *See, e.g., Baker v. Ploetz,* 616 N.W.2d 263 (Minn.2000), and cases cited therein.   Because Ms. Bangs' averments in her complaint make clear that Mr. Schroth's alleged conduct did not occur when she was a party to an existing judicial action or proceeding, her claim under § 33–5–114 fails to state a claim upon which relief can be granted, and we dismiss that claim under W.R.C.P. 12(b)(6).

### CONCLUSION

[¶ 34]   We reverse the summary judgment in favor of Mr. Schroth on all claims except the claim of deceit under Wyo. Stat. Ann. § 33–5–114, which claim is dismissed under W.R.C.P. 12(b)(6).   We remand the case to the district court for further proceedings consistent with this opinion.